Submitted on petition to review ballot title and answering memorandum May 24, ballot title certified as modified May 31, 1984

# HUKARI et al,
*Petitioners,*

*v.*

# PAULUS,
*Respondent.*

## (SC S30693)

681 P2d 1164

David A. Rhoten, Salem, submitted the petition for petitioners. With him on the petition was Rhoten, Brand & Lien, Salem.

John A. Reuling, Jr., Special Counsel to the Attorney General, Salem, filed the answering memorandum for respondent. With him on the memorandum were Dave Frohnmayer, Attorney General and James E. Mountain, Jr., Solicitor General.

Before Peterson, Chief Justice, Lent, Linde, Campbell, Roberts and Jones, Justices.

## PER CURIAM

Petitioners challenge a ballot title provided by the Attorney General for an initiative measure which would prohibit the application, discharge or storage of a synthetic substance if the substance would initiate or promote cancer, or cause mutations, and if the substance is likely to reach the waters of the state or be integrated into the human food chain. They argue that the title is insufficient, not concise, and unfair. ORS 250.085. They also argue that it does not meet the statutorily required minimum standard of readability. ORS 250.039. The Attorney General certified the following ballot title:

"BARS SUBSTANCES WHICH CAN CAUSE CANCER, MUTATIONS FROM WATERS, FOODS

"QUESTION: Shall private lawsuits prevent, penalize introduction into state waters, human food chain of synthetic substances which can cause cancer, mutations?

"EXPLANATION: Prohibits activities likely to result in entry into state waters, human food chain, of synthetic substances which can cause cancer or mutations. Authorizes private lawsuit, after notice, to halt activity and impose daily damages from notice date. Successful plaintiff receives attorney fees, investigation and suit costs from defendant plus 1/3 of damages. Remaining damages pay for dissemination of information on alternatives and establish fund to pay court costs of successful defendants, unsuccessful good faith plaintiffs."

Petitioners argue that each of the three parts of this title fails to conform to the statutory requirements and offer the following as an alternative:

"BANS USE, DISCHARGE, STORAGE OF CERTAIN MAN-MADE SUBSTANCES IN WATERS/FOOD

"QUESTION: Shall lawsuits stop and punish storing or putting in waters/foods man-made substances which can cause cancer or mutations?

"STATEMENT: Allows suits against persons using products with certain labels if that product may reach water. Allows suits to stop acts which may cause a man-made substance which can cause cancer or mutations to enter water or human food chain. Winning plaintiff gets 1/3 of daily damages; 1/3 is paid to state to distribute data on alternatives

to such substances; 1/3 funds other similar suits. Winning party may get lawyer fees, costs."

The Attorney General in response concedes that his original ballot title did not meet the readability standards "to the fullest extent practicable" and suggests the following alternative, which retains his original caption:

"QUESTION: Shall private suits stop, punish acts causing synthetic substances which can cause cancer, mutations to enter water, human food chain?

"EXPLANATION: Bans acts likely to cause entry into state waters, human food chain, of human made substances which can cause cancer or mutations. Allows private suit, after notice, to halt acts and impose daily damages from notice date. Winning plaintiff gets lawyer fees, investigation and suit costs from defendant plus 1/3 of damages. Rest of damages pay for state to distribute data on alternatives; create fund to pay costs of losing good faith plaintiffs, winning defendants."

## The Caption

Neither party argues that there is a 10 word caption "by which the measure is commonly referred to" and we know of none. *See Binninger v. Paulus,* 297 Or 179, 681 P2d 129 (1984); *Ferry v. Paulus,* 297 Or 70, 682 P2d 262 (1984).

Petitioners contend that "bans" should be used in place of "bars" and that the caption fails to use some terms that are in the measure. They contend that because of these omissions the caption is insufficient. We find this argument unconvincing. The Attorney General's proposed caption is fair and sufficient.

## The Question

Petitioners challenge the use of several terms in the question. The Attorney General agrees that "prevent" should be changed to "stop" and "state" could be omitted. He argues that the phrase "human food chain" is essential because the measure goes beyond the prohibition of introducing these substances into food itself. He also argues that the measure grants private citizens the right to file suit and this is an important aspect of the measure. We agree with him. However, the Attorney General's revised question is so condensed that it is inadequate. We have constructed the following question:

"QUESTION: Shall private lawsuits stop and punish placing synthetic substances which can cause cancer into water or the human food chain?"

### The Explanation

■ Petitioners' single substantive complaint about the Attorney General's explanation is that it fails to refer to "the requirement of adherence to the conditions and instructions on the labels on the subject products." The Attorney General agrees that the measure contains this requirement which is not reflected in the certified ballot title, but argues that because of the other more extensive prohibitions in the measure, this requirement loses significance. We agree. The Attorney General's suggested alternative explanation is fair and sufficient. We certify to the Secretary of State the following title:

"BARS SUBSTANCES WHICH CAN CAUSE CANCER, MUTATIONS FROM WATERS, FOODS

"QUESTION: Shall private lawsuits stop and punish placing synthetic substances which can cause cancer into water or the human food chain?

"EXPLANATION: Bans acts likely to cause entry into state waters, human food chain, of human made substances which can cause cancer or mutations. Allows private suit, after notice, to halt acts and impose daily damages from notice date. Winning plaintiff gets lawyer fees, investigation and suit costs from defendant plus 1/3 of damages. Rest of damages pay for state to distribute data on alternatives; create fund to pay costs of losing good faith plaintiffs, winning defendants."

Ballot title certified as modified.