Argued March 28, petition denied March 31, 1950

DODD *v.* NEUNER, ATTORNEY GENERAL ET AL.

216 P. (2d) 670

*Kenneth Kraemer,* of Portland, for Appellant.

*George Neuner,* Attorney General, of Salem, and *Robert R. Carney,* Assistant Attorney General, of Salem, for Respondents.

## LUSK, C. J.

The petitioner, a registered voter residing in Eugene, Lane County, Oregon, has appealed from the decision of the Attorney General which determined the ballot title for an initiative measure filed by the respondent Committee for Balanced Apportionment,

an unincorporated organization. The proceeding is authorized by § 81-2106, O. C. L. A.

The petition, to which the respondents have demurred, shows that on or about November 21, 1949, petitioner and others filed with the Secretary of State a petition for an initiative measure for a proposed constitutional amendment, for which the Attorney General duly prepared a ballot title, as follows:

"CONSTITUTIONAL LEGISLATIVE SENATOR AND REPRESENTATIVE APPORTIONMENT AMENDMENT

"Purpose: To amend section 6, article IV of Oregon constitution, requiring a commission consisting of governor, secretary of state and state treasurer, on July 1, 1951, and July first each tenth year, following latest federal census, to reapportion the legislative representation.

"Representation shall be determined on basis of population; equal proportion shall be used for determination, except that no county shall have more than one-third membership of either house. County with insufficient population for a member shall be attached to or grouped with adjoining county or counties for representation.

"Original jurisdiction is vested in supreme court of Oregon to enforce compliance."

Subsequent to February 20, 1950, the respondent Committee for Balanced Apportionment filed with the Secretary of State a petition for an initiative measure for a proposed constitutional amendment which likewise deals with the subject of apportionment of the number of senators and representatives constituting the legislative assembly. This measure would amend not only § 6, Art. IV, of the Constitution, relating to apportionment, the method of determining the ratio of senators and representatives to population, etc., but

also § 2, of Art. IV, which fixes the number of senators and representatives, by increasing the number of senators from thirty to thirty-six, and § 4, of Art. IV, which provides for their terms of office and the classification of senators with respect to their terms. The measure provides an elaborate method of apportionment, the details of which for the purposes of the present question it is unnecessary to set forth.

For this measure the Attorney General has prepared a ballot title, as follows:

"CONSTITUTIONAL AMENDMENT FOR LEGISLATIVE REPRESENTATION REAPPORTIONMENT

"Purpose: Amending sections 2, 4 and 6 of Article IV, of Oregon constitution, requiring legislature to reapportion representation decennially and increasing senate to 36 members.

"Each county to have at least one representative. Remaining representatives apportioned by method of equal proportions. Senatorial districts shall be entitled to at least one senator and embrace not more than three counties. Ratios are used in determining number of senators. No county to have more than one-fourth of total legislative seats.

"If legislature fails to reapportion, the secretary of state shall act. If secretary fails, supreme court shall take jurisdiction and compel compliance upon application."

The claim of the petitioner is that the short title of the measure sponsored by the Committee for Balanced Apportionment is not "distinctive" within the meaning of § 81-2106 in that it cannot be distinguished by the average voter from the short title of the measure sponsored by the petitioner, and does not fairly represent the subject matter of the measure in that it does not indicate the proposed increase in the membership of

the Senate from thirty to thirty-six senators. It is further claimed that the general title is misleading because it contains no reference to the following provision of the measure:

"In case any county shall not have the requisite population to entitle such county to a senator, then such county may be constituted a senatorial district in itself."

Section 81-2106 makes it the duty of the Attorney General to prepare ballot titles for initiative and referendum measures and provides:

" * * * The ballot title shall contain: (1) A distinctive short title in not exceeding ten words by which the measure is commonly referred to or spoken of and which shall be printed in the foot margin of each signature sheet of the petition. (2) A general title which may be distinct from the legislative title of the measure * * *. In making such ballot title the attorney general shall to the best of his ability give a true and impartial statement of the purpose of the measure and in such language that the ballot title shall not be intentionally an argument or likely to create prejudice either for or against the measure."

In § 81-2107, as amended by Ch. 55, Oregon Laws 1949, the Secretary of State is required, among other things, to furnish to the county clerks his certified copy of the ballot titles of the several measures to be voted upon at the ensuing general election. He is commanded to use for each measure the ballot title designated in the manner provided in the statute, and "such ballot title shall not resemble, so far as to probably create confusion, any such title previously filed for any measure to be submitted at that election * * * "

(1) The petitioner has suggested the following alternative substitutes for the short title: "AMEND-

MENT ALTERING METHOD OF LEGISLATIVE APPORTIONMENT AND INCREASING SENATE MEMBERSHIP'' or ''AMENDMENT INCREASING SENATE MEMBERSHIP, ALTERING POPULATION BASIS OF LEGISLATIVE APPORTIONMENT.''

■ Petitioner's objection to the Attorney General's short title is apparently based on the use of the word ''distinctive'' in the clause prescribing what the short title shall contain. His argument proceeds upon the assumption that, where there are two measures dealing with the same subject and having the same general purpose, ten words must be used in the short title of each from which the voters may detect the difference in the measures. To accomplish that purpose he would insert in the short title of the rival measure reference to the provision for increasing the number of senators.

We think that the word ''distinctive'' was not used in that sense, but, in view of other provisions of the statute, that it was intended that the language of the short title should so describe the measure as to convey to the voter's mind as nearly as may be the general character of the proposed legislation. The distinctive short title must be, as the statute says, in ten words ''by which the measure is commonly referred to or spoken of''.

■ The ''ballot title'', as defined in § 81-2106, has two parts: The ''short title'' of ten words and the ''general title'' ''expressing in not more than 100 words the purpose of the measure.'' No reference is made in § 81-2106 to the possibility of confusion with other measures. But in the next section, which enjoins upon the Secretary of State the duty of furnishing to the county clerks his certified copy of the ballot title of

measures to be voted upon, it is provided that "Such ballot title shall not resemble, so as to probably create confusion, any such title previously filed for any measure to be submitted at that election". This is the only provision against confusion from similar titles. It has regard not to the short title, taken alone, but to the *ballot title,* which comprehends both the short title and the general title; so that the clear legislative intent is implied, that if the two read together are free from confusing resemblance to a title previously filed, the ballot title in that respect is unobjectionable. That is the case here, for the general title which petitioner challenges refers to the provision for increasing to thirty-six the number of senators and to other features of the measure, which will readily enable the voters to distinguish it from the measure sponsored by the petitioner.

◾ In our opinion, the short title prepared by the Attorney General is not open to the criticism leveled at it, for it is distinctive in the sense of the statute and uses words by which the measure will be commonly referred to or spoken of. Both measures undoubtedly will be commonly referred to as legislative apportionment or reapportionment measures. On the other hand, to in-include in the short title the reference to the provision for increasing the membership of the Senate might well mislead the voter as to its dominant purpose. Beyond that, it would violate the requirement for the use of ten words by which the measure is commonly referred to or spoken of, since it would leave in doubt whether the measure will be commonly spoken of as a reapportionment measure or as one to increase the membership of the Senate.

◾◾ (2) As to the general title, the petitioner would

eliminate from Paragraph II of the title prepared by the Attorney General the following: ''Senatorial districts shall be entitled to at least one senator and embrace not more than three counties. Ratios are used in determining number of senators'', and would substitute therefor this language: ''Senatorial districts to consist of one county or based on population ratios; districts to have at least one Senator and embrace three counties or less.''

Besides the fact that the proposed language is very probably misleading and not warranted by the context of the measure, we cannot say from our examination of its somewhat involved and complex provisions, that the Attorney General has misinterpreted its meaning in the sentences which the petitioner would delete, or that he has failed in the discharge of his statutory duty to ''give a true and impartial statement of the purpose of the measure and in such language that the ballot title shall not be intentionally an argument or likely to create prejudice either for or against the measure'', or that the title prepared by him is ''insufficient or unfair''. § 81-2106. These are the tests which govern our decision, not whether the court could write a better title. *Wieder v. Hoss,* 143 Or. 122, 125, 21 P. (2d) 780. Applying them, we hold that the ballot title as prepared by the Attorney General in all respects complies with the law, and it is, therefore, certified to the Secretary of State in accordance with the provisions of the statute.